Okay, the next case of the morning is number 22-503-5, Bryan v. Cano, and, oh, yeah, I need to look at my list. We'll hear first from Mr. Ainsa. Frank Ainsa Good morning, Your Honor. I'm Frank Ainsa, attorney for the appellant. I would like to address first in my 15 minutes is the sovereign immunity issue of the 11th Amendment. I, as you can see from the briefing, it's the appellant's position that the 11th Amendment is not applicable in this case, and the reason is quite simple. County Judge Cano, as the record amply shows, never acted in any capacity of a state official. The district court took this issue almost on a de novo review instead of a following the review that you would traditionally do with a motion for summary judgment, and actually found that Judge Cano was acting as a state official, and the record completely undercuts that because Judge Cano was never sued as a state official. He was sued only as county judge. His declarations were issued by him as county judge under the declaration of a local state of disaster. All of his orders were signed as county judge. There's absolutely nothing in the record that indicates that he ever purported to act under the statutory scheme, which is 418-0105, which gives him the status of being a designated agent of the governor. I just want to ask you, I assume you're alleging there's some error in all this. As I read the district court's opinion, he discusses a variety of things, and he just says the court must determine whether Judge Cano represented the state of Texas. I don't know if that means anything other than, as I go through analysis, I need to figure out who this county judge was acting for. I look at the issue of going to state. I look at the issue for the county. Where is the error here if he ends up saying there's no sovereign immunity affecting the claim? Well, there's nothing in the record that indicates he ever acted as a state official. In fact, Your Honor, if you look at the statute 0105, which designates him as the statutory agent, designated agent, it says very clearly in there that he may exercise those powers. There's nothing in the record that indicates he did exercise. Well, but even if we agree with you on that, and I think you have a good strong argument, the judge went on to consider all the claims on the merits. It seems to me that we could assume arguendo if we find that it's a difficult issue. The county judge, Cano, was acting solely as the top official of Brewster County, but then we would still have . . . you know, you've still got some high hurdles to surmount on the merits. Your Honor, you are correct. Those issues are still there, and I'll address them next then. I just wanted to hit the Eleventh Amendment up front because it's obviously dispositive in one sense, if you were to fight for it. Regarding the due process issues and the equal protection issues, now, those apply, obviously, to the declarations that Judge Cano issued. He issued two of them, and they apply to all his orders, closing the hotel to recreational visitors. And so, first, I would like to deal with his orders declaring a local state of emergency. Now, there's been much discussion about this, about just how far does the Jacobson Standard go, which is now the Rational Review Standard, in giving deference to a state actor's decisions to deal with pandemic issues here. But in this case, Judge Cano was clearly acting under a declaration, a separate statutory scheme from the Governor, which requires him to declare a disaster, if he wants to invoke this particular statute. A disaster is a defined term. Judge Cano had no disaster on his hands when he issued the declaration of a local state of disaster. The record is absolutely clear that even Judge Cano conceded that a disaster means either the epidemic is occurring in Booster County, or it is eminently threatened to occur. And eminently threatened means about to occur. Let me just ask you a question, because I remember those first couple of months pretty well. And I do recall that there was somewhere out in West Texas, not as far as Marathon, but it was San Angelo or someplace to the west of San Angelo, where a county board of, it was either a city council or county commissioners got together, and there had been very little, if any, COVID in the county at that point, and then they all came down with it. Well, Your Honor, I can't really address that. I mean, the problem, well, I know, but the problem was that there was widespread ignorance about how the disease was transmitted. There was widespread acceptance that it was being transmitted very rapidly and through contact of some sort, human interaction of some sort. So why, what makes the declaration of an imminent disaster so wrong as to violate due process? I think I can answer that question from my standpoint, obviously. The declaration was issued even though Judge Connell conceded that there was no epidemic in Booster County, and he also conceded that there was no reported cases of COVID-19 in any of the bordering counties to Booster County. Now, that covers a lot of distance out there. Now, if there's anything that would circumscribe his discretion, which is granted to him in 418-108, it is that the definition of disaster uses the term imminent, and imminent means, in common parlance, it means about to happen. Now, whether there's discussion about other counties and what happened in other parts of the state of Texas, at least with respect to Booster County, Judge Connell did not meet the imminent, about imminent standard when he issued that declaration. Now, if you've said repeatedly in your other opinions— What's your best case? There is no pandemic exception. The Constitution is not toothless. The Constitution does not go home just because there's a public health emergency. And so I'm saying to you that if— Is your theory that the county judge here was not allowed to do anything or that the county judge went too far given the specific facts of your client? I don't think that he had any basis to issue a local state of disaster because the statutory— Any kind. —did not be met. Your Honor— Do you want to try an error argument as well, just as a backup of nothing else? I'm sorry? Do you want to try an error argument as a backup of nothing else? I don't understand the question. Look, it's your argument. If you want to stick with the notion that the county judge had no power to do anything of any kind, no matter how minimal, that's your view. But I'm inviting you. Do you want to take a shot at arguing that the county, even if the county judge could do something, he went too far here? He went too far. How? Because he closed hotels without having a disaster under Section 418108, which gives him the authority to regulate the occupancy of premises. Unless he has a disaster, he has no authority to close hotels to recreational visitors. And then on top of that, when you get past the due process on the declaration, you get to the equal protection argument, and it makes even less sense because he closed hotels to recreational visitors. But he allowed people who were law enforcement, medical personnel, National Reserve, housing specialists, they could stay at the hotel without being tested, and they carried the very same rest. Anybody else could come into the county to visit? He didn't regulate them either. What was the minimum amount of stay requirement for a distinction between short-term and long-term visitors? Was there one? I don't think there is one. You have short-term rentals, which can be a week, two weeks, and so forth, as opposed to long-term leases. I don't know the exact answer to that question, but he clearly shut down hotels, motels, and short-term rentals. But he did not prevent people, recreational people, from coming in and camping out or staying with their friends in their homes or going to a food store or going to a gasoline station or going to a liquor store. And he didn't even prohibit them from coming to his commissioner's court to a meeting. Now, you said in your opinions, and I've read Big Time and Abbott many times, you don't have to accept nonsensical explanations for state regulations. And what you have here is him responding to a fear that was expressed to him by Dr. Ekta Escobar, who was a pediatrician. She denies that she ever told him that a disaster existed, but he apparently relied upon her fears that tourists would come in and overwhelm the medical facilities in Alpine, Texas. But County Judge Cano also acknowledged that the regional medical director who supervises his county never told him that a disaster existed. And so you have this combination of nonsensical reasons to target hotels as opposed to anything else other than what was regulated, like gatherings of people and so forth. Also, give me your take on where I go astray. You have the governor of Texas saying there's a disaster in every county, if I understood what his pronouncement was on March 13 or whatever it was. One of those counties happens to be Brewster. You have a county judge. It gets into the unknowns, a word that Judge Jones used a little while ago. A disaster that started someplace else, we're not sure of the origin, we're not sure about transmission. So this particular judge went further, I guess, than most county judges in the state. But this county judge decided we need to be proactive on this to prevent the kind of uncontrollable situation here. I know there's a disaster, the governor told me, so I'm going to take some steps here to prevent the problems in a tourist-like place, such as your poor client had to put up with for six weeks or whatever this was of closing his hotel. But that's actually part of the reason, perhaps, for this pronouncement. So there were unknowns. It was a national focus on this. Disaster hardly seems to be a particularly out-of-place word for what people were apparently saying at the time, in my recollection. So taking all of that and recognizing the governor had, the county judge was acting without any certainty about what this pandemic, not pandemic, what this COVID would be like. Took steps that may have gone too far, but you need to be able to convince us that this isn't, at least at some level, past the kind of scrutiny that applies. Your Honor, I think I can best respond by approaching it from this direction here, that regardless of the fact that the governor had declared a pandemic in his declaration, yes. He used the word disaster, did he not? He did. He did. And he declared it under his statute. He didn't say it's in Austin. He didn't say it's in Houston. He said it's in Texas. He did. But if you look carefully at the statutory scheme that the governor used, it was basically to be able to marshal the resources throughout the state to fight the pandemic and to plan and so forth. The governor did not declare a pandemic in Bruceford County and the governor did not close hotels in any of his resolutions or any of his orders. And even he went so far as in GA-14, which was enacted shortly after his first order, he even made the point of explicitly saying that any county judge who is acting under 1015 cannot issue any order in conflict with his order. Now, that seemed like a very good argument to me, that at the very least, County Judge Cano extended his order beyond when Governor Abbott made that decision. But then in their brief, the county says that that's not accurate, that Governor Abbott never required anybody to retrench about hotels. Well, I'm going to stand on my brief. Okay. It is accurate and I think that Governor Abbott did not close hotels and he restricted the authority of anybody who was acting. And it may be, too, that if he didn't explicitly say that county judges couldn't restrict hotels, it was because there were only two counties in the state that did that, right? I thought you said Brewster and one other county were the only two counties that restricted hotels. That's my understanding. What was the other one? I think it was Pecos County. But the point of the matter is that every one of those counties would have the same definitional issue if the county judge. Now, in one of those, it was the city, not the county, that declared, I believe, an emergency. But I have to come back to basic statutory construction and the substantial relation issue here that all these state regulations issued under these regulations have to have a substantial relationship under Jacobson and under Abbott and under Big Time. And here, you can't escape the fact that the record is absolutely clear that there was no pandemic going on in Brewster County at the time those declarations were issued and there was none in the surrounding counties. And so regardless of whether he was being proactive, as you said, looking at the future, that was not the time he could do that. Okay. John, if I could ask one question about the limit of your claims. As I read the district judge ruling and the arguments in district court, this is about the federal constitution. Do you have any state law claims you're asserting? Your brief on appeal seems to be saying at the end, I guess, your initial brief, state law claims. But isn't this a federal constitutional issue and not a state statutory violation that you're bringing? That's right. We're proceeding under the constitutional claims. Okay. Thank you. And that's it. And I think, though, that a fair reading of the briefs, you'll see that Judge Connell just simply did not have any basis to issue a declaration or the orders. All right, sir. You have time for rebuttal. Mr. McGee. May it please the court. My name is Eric McGee and I represent the Honorable Brewster County Judge Eleazar Connell. Judge Connell would respectfully request that this court affirm the district court's decision granting his summary judgment motion. I think as the court has picked up today and inquired in March of 2020, the United States faced unknown risk, public health crisis of a substantial risk that we had no idea what state and local officials were going to do to craft emergency public measures during the escalation of the COVID-19 pandemic. I think one of the things that is very clear from the record here, and I think that's been inaccurately stated so far, is that there was a global pandemic. The governor absolutely declared that there was a global pandemic. And he said on March 13th in his proclamation that the global pandemic of COVID-19, the coronavirus, posed an imminent threat of disaster in the state and declared a state of disaster for all counties in Texas. Interestingly, if you actually look at the Texas Disaster Act, Chapter 418, and the reference to that, Governor Abbott's proclamation is 1740 through 1742 on the record on appeal. The Texas Disaster Act, the very definition of what a disaster is, there is no breakdown between the authority granted to the governor and the authority granted to a local governmental official, such as a mayor or a county judge or a school district official. The definition applies to all. And it applies exactly as the court noted, even where there is one that is imminent. Otherwise, you would be acting, disaster encompasses a bunch of things. The analogy that I always think of in West Texas is a fire that's coming. You don't have to wait for the fire to actually cross your county boundary before you implement a state of disaster. But you're not arguing that Judge Cano was acting as an agent of the state because that's a separate provision of the statute, and his orders did not refer to that separate position, correct? Correct. Okay. 418.10.15 is the one where you actually act on behalf of the governor. Here, the governor, not only the governor, but the president, had also declared the United States. Well, I mean, just pushing back just a little bit, at least, South Dakota never closed, did it? Not that I'm aware of. I'd say the population of South Dakota is more concentrated than the population of Brewster County. Correct. So it seems to me that these declarations go so far, and South Dakota never experienced the pandemic in the way that a lot of places did. But that's in hindsight, perhaps. Let me ask you about the March 30th. I don't know if you wanted to respond to that. I thought it was a valuable observation. On the March 31, if I have the date right, Governor Abbott said, prohibited local officials from restricting essential services. What's your argument on that? Why does that not, at least as of that date, should have caused some change in Brewster County? So the language is slightly different if you look at GA-14, which is the March 31st one, and GA-18. The language actually, at the end of it, says, as long as it does not conflict with any of my orders. Now, which order are you talking about, March 31? The March 31 one, which was GA-14. It says, as long as it does not conflict with any other aspects of here. When you look at where critical infrastructure is defined, it's defined in two locations. It's defined with the U.S. Department of Homeland Security, and it was also with the Texas Department of Emergency Management, or TEDM. Both of those places had the definition of what critical infrastructure is. And actually, Mr. Ainsa, in this case, it's in the Record on Appeal. Mr. Ainsa submitted a declaration, and that declaration said that the U.S. Department of Homeland Security Guidance and Essential Infrastructure Forces, it's at Record on Appeal 1784 and 1788. Hotels were not on the list of critical infrastructure businesses. Even the workers at hotels were not listed as the employees for critical infrastructure. Mr. Ainsa's declaration in the submittal of the Homeland Security Guidance of Essential Infrastructure Workforce, it shows there that the hotels could be used for COVID-19 mitigation and containment measures, and that would be considered a critical infrastructure. But recreational travelers to hotels were not listed as essential workers with the U.S. Department of Homeland Security on them. Let me see what worries me about this case. You certainly have a lot of plausible arguments. It's a very forgiving standard that applies to what District County Judge Cano did. But it does seem to me that the order in Brewster County is at an extreme, at least as far as I know from this record, and I mean, leaving it at the record, at the extreme compared to what was done in other counties in Texas, forgetting about South Dakota and other places. So that's relevant in a sense. I'm just concerned that a plaintiff, like this hotel owner or someone else, so significantly affected by an order that's on the extreme, just as a matter of fact, even though it's a matter of law, under your argument, really has no remedy. Is there not something of being an outlier in how the pandemic has responded to that creates a risk for the order and for the county judge who is willing to be an outlier? I have three answers for that. The first one is I think you actually have to look at the statutory scheme here, which allows for discretion of the county judge. Properly, reasonably exercise discretion. Correct. Use of discretion sounds like a standard to apply. At the very beginning of a pandemic where there were so many unknowns here. Understood. That's the big picture argument, but I'm trying to bore down into it. Surely, at some stage, a county judge could go too far, but you have three answers. Suppose the county judge had forbidden intermarital contact. Then I think under that circumstance, you have violated two other orders. You've violated the President of the United States orders and Governor Abbott's because Governor Abbott said in his order, he was restricting to gatherings outside of your household of 10 people. So from that, you would be violating a direct order from the governor. Here, and back to your question, Judge Southwick, the specific thing is all of his orders were only temporary in nature. This was not a long-term effect. He wasn't trying to exceed any authority. Well, it did just happen to cover two of the most profitable months for a hotel in Brewster County. Except that they actually told us that the hotel cancellations actually had already canceled all the way down to Zebra. Well, that leads to my question about this. If there is a limit on the discretion of a county official, why not send it to the jury? Why do all these things go off on the law? Why not send it to a jury? I don't think this is a case of where there's a limit because I think exactly in the instances that we've seen since this, if you remove that we're months past, now we're years past the initial COVID-19 thing, Governor Abbott has sued on behalf of the Attorney General, Ken Paxton, multiple times governmental officials who he thinks has taken this too far and violated his orders. He sued over mask mandates and other types of closures. Governor Abbott has not said that Brewster County judge went too far. In fact, they themselves said that there was no effect when they provided testimony before the Commissioner's Court related to the judge's declarations, that their hotels were closed all the way. You say there's no effect. Is that what you mean, that the hotel would have been closed regardless of what County Judge Kendall did? Is that what you mean by no effect? Aspects of the hotel would have been closed regardless. And they themselves said it. The manager of the hotel. I'm sure it would have lost business. This isn't the only case we've had about this sort of thing. And I'm sure the hotel would have lost business because every service open to the public lost business. So the question probably would have been damages, net loss, and they might or might not have a case on that. But suppose you could send it to a jury and a jury could evaluate the testimony. Frankly, it may not have been error for the court to exclude the testimony of Dr. Alozi. I did not have a chance to look at his declaration specifically. But my goodness, he certainly had a wealth of credentials and he could go before the jury. And the other experts that Kano relied on could go before the jury about the state of Brewster County back at that time. Well, I think that when you look at this court's guy, that's not only in big time, but in the New Orleans catering case. And then we go to the Supreme Court where the Supreme Court actually did make a ruling and it was on a different issue. It was on the religious aspect of it. In South Bay United Pentecostal, that's 140 Supreme Court 1613. And in Chief Justice's concurring opinion, he actually said that in these cases where we're asking the judiciary to second guess the background, the competence, and the expertise of the local governmental officials who are responsible for those, we do not have jurisdiction on this. And like I said, in the New Orleans catering versus Cantrell, that was at 2021 Westlaw 795979. This court actually said that the second is the Supreme Court requires a careful description of the asserted fundamental liberty interests at stake here. And they also noted that the court in the South Bay case said that there's a lot of subjective nature in here as to what the specific facts are. And I think that it's interesting that the appellates throughout this case have tried to limit this and craft the factual arguments into something that they're not. And that's the repeated, even repeated here today, that Dr. Escobar is an unqualified, fearful, the sky is falling, chicken with their head cut off, they're just entering some order. That's not what the record shows. The record showed very specifically that on March 3rd, Judge Cano received an email informing him that there was a patient that was being sent to Alpine to the Big Bend Regional Medical Center, the hospital. That's at 1605. That was as early as March 3rd. The fear there is not a fear. It's an actuality. The CEO, Rick Flores, of the hospital and Dr. Escobar, who worked at the hospital, yes, she is a pediatrician, but the hospital had appointed her as their COVID task force director. No different than Dr. Hellerstadt, who is the head of the Texas Department of Health and Human Services. He also is a trained pediatrician. Under both of those circumstances, the fear was we had no testing in March of 2020 or April of 2020. We only had 25 hospital beds in the hospital. We only had two ventilators and two ICU beds, and we actually had no ICU trained doctor at Big Bend Regional Medical Center. That's all at record on appeal 1931 through 1932, all the way through 1934, the record on appeal. I can ask you this. Why couldn't you at least let Mr. Bryan stay at his own hotel? He could have stayed at his own hotel. That's the thing. There is no travel restriction for Mr. Bryan. Mr. Bryan has residences in Galveston. According to his declaration, he said he was not allowed to under the Kano order. So you're saying that's incorrect reading of the order? Correct. There is no travel restriction on him. He is a owner of the Gage Hotel. Not only does he own the Gage Hotel, he owns a private residence that is not for rental at the Gage Hotel. Your position is at no point, sorry, just to clarify, your position is at no point was he forbidden from staying at his own hotel. That's just a mistake on his part. Correct. I think he was out of state is what he actually said in his pleading. He couldn't travel from Colorado Springs, one of his other residences. His declaration, this is at 3025, is Judge Kano's orders allowed only persons who had a principal residence in a hotel to stay there. The Gage Hotel was not my principal residence. It doesn't say principal. That's incorrect. That is incorrect. If you look at his order, Judge Kano does not say principal residence. And if you just go through the record on appeal as I was doing, there are multiple instances where the judge sought all the advice of the leaders, not only from the city of Alpine, Sewell Ross University, Alpine ISD, the Economic Development Board. He had a whole task force gathered together. Dr. Escobar was appointed from the hospital to be on that task force and go through all of the different strategies that were going on here. And I think that goes back to your initial question, Judge Soplic, is you were asking about the March 31st order and that the two orders do not conflict with one another, Judge Kano's order and Governor Abbott's order. And if you go through the record and you actually look at what occurred after that, the Brewster County Commissioner's Court, it's not only for the judge. The judge only can declare a declaration for seven days. That's in 418-108-A. After seven days, whoever that official is, the mayor or the county judge, is required then to go to their governing body and have that extended. He did that. That's 418-108-B. The Commissioner's Court extended that order, and then it was extended for 30 days. Then his declaration extended indefinitely, but then you go to the executive orders under 418-108-G, which is the movement or ingress and egress of people, the movement of people, and the occupancy of premises. And all of those were only in short-term duration. He initially ordered it for April the 2nd. Then he ordered it seven days later for April the 9th. And then he ordered restrictions, not closures of the hotel. It was a restriction of the occupants of it until April the 30th. If you really look at the record, what I think is interesting, and you look at Governor Abbott's original order, which was on March 19th, GA-108, that's at 1762-1764, that's the one where Governor Abbott adopts President Trump's guidelines, groups of no more than ten people, closing the restaurants to only drive-thru pickup and delivery, nursing home, and only keeping critical infrastructure operational at that point. Judge Kano then entered his order on March the 20th, and then it was changed on March the 23rd to make sure that it accommodated for that critical infrastructure, which was emergency services to support the city, the county, the state, Sewell Ross University, and the ISDs, healthcare professionals, and employee housing for all non-essential, and it was closed for all non-essential recreational travelers. That's at 1771. Is Alpine Pecos County? No. No, I didn't think so. Alpine is Brewster County, and then Martha is Pecos County. Judge Cinderella Guayavera is the county judge over there. But I think what's really telling here is when you even look at the declaration that was entered by the manager of the Gage Hotel on March the 24th, this is before there had ever been the actual restrictions put into place as to who could stay at the Gage Hotel. She declared at that point that ever since President Donald Trump made his announcement on March 16, 2020, the citizens should stay home, and Governor Abbott issued his executive order, GA08, on March 19, 2020, prohibiting taxes from going to bars, restaurants, food courts, gyms, and massage parlors. The Gage Hotel has experienced cancellations in the near term to near zero, and into the future months in single digits with ongoing cancellations still occurring. And she said, as long as the ban on going to restaurants and bars remain, and the directive for the public to stay at home, I expect to see only very few guests at the Gage Hotel. So this was not a closure of the Gage Hotel. This was a restriction on the occupants under the authority granted by the Texas Disaster Act, and it was not for an indefinite period like the other— That's a causation argument. That's not a legal argument against—in favor of what Judge Kano did. Correct. And I think that's where you go to the record and look at what the rational basis between the relationship was. That's the number of hospital beds that they had. There's no testing, no vaccines. We didn't know anything about COVID in March of 2020. We were scrambling not only at a national level but also at a state level to make all these determinations. And then once Governor Abbott did issue GA18, and that became effective May 1, the governor allowed—I mean, not the governor, Judge Kano allowed his executive order to expire on April 30. So there was no conflict between the two. That's where you have to go back to the record and look at specifically all the instances of where Judge Kano went through meeting with multiple sources, obtaining evidence and information from everyone, including Dr. Rachel Soney, who he advised earlier. And I think that's a little bit deceptive to say that none of these people advised that there was an actual disaster defined by 418. That's not what the requirement was. There was no disaster because he didn't ask if there was a disaster. It had already been declared. So he's not calling up Dr. Rachel Soney. So we would ask this court to affirm. Thank you, Your Honor. All right. Thank you, sir. I simply have to say, at the end of the day, this is before you on a motion for a summary judgment, a board of granting a motion for a summary judgment. The standard that the district court should have used is to determine whether or not there was a genuine issue of material fact and whether the appellee was entitled to judgment as a matter of law. The record is replete with testimony, conflicting testimony. And if there is ever a case that should be tried to either the court or to a jury, it is this one because there are material facts that have to be determined. And so I think it is at this point the proper thing to do would be to order the case to be reamended to the district court for trial. And any unresolved factual issues can then be resolved. And to make that even more clear, the district judge even interjected his own personal views into this that are not even in the record, such as supporting his order by saying that there's a substantial likelihood that Judge Cano's orders have reduced the number of deaths and by stating in there that COVID came from China and was brought to the United States by travelers. These statements are completely outside the record. But it goes to show you that there was almost a predisposition on his part to extend basically not to question anything that counted. I don't understand what you're saying. What is the most significant disputed fact that would need to be resolved? Whether or not there was a disaster. That's a legal conclusion. We know what was going on in Brewster County at the time. We sort of knew the record already. I'm just wondering, what you're saying is what was happening was not a disaster. Judge Cano said it wasn't enough. The governor said whatever he said. Anyway, it seems like the events and facts are known. It's what to make of them is unknown. There's a factual inquiry that has to be undertaken to determine whether or not there's a legal state of disaster. But by his order, the district judge cut off any of this from being subjected to a trial, which is where it should be. Because procedurally, I can't say this strongly enough, this is a motion for summary judgment that you're looking at here. This is not the result of a trial. And the district judge treated this as if it was a de novo review instead of following the traditional review that you would give to a summary judgment. And so all the factual elements, what did Dr. Escobar say? What did she not say? What did the county judge say? What was he relying on? What was he using? All these issues are out there that has to be resolved. And so I'm, again, ending my argument by saying the proper result should be a remand for trial. All right. Thank you very much. We have your argument. Thank you. Court will be in recess until 9 o'clock tomorrow morning.